UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00206-TBR

JASON INGRAM, *et al.*,                                                      PLAINTIFFS

v.

OASIS INVESTMENTS, LLC, *et al.*,                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants LeeCor Systems, LLC and Steven Medlin's partial motion to dismiss or, in the alternative, for a more definite statement. [DN 14.] Plaintiffs Jason and Dilenia Ingram responded, [DN 33], and Defendants replied, [DN 27.] Fully briefed, this matter is now ripe for decision. For the reasons discussed herein, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Additionally, Defendants' motion to strike Plaintiffs' response as untimely filed, [DN 38], is **DENIED**.

## BACKGROUND

The facts, as set out in the Ingrams' complaint and taken as true, are as follows. Plaintiffs Jason and Dilenia Ingram own real property on Mr. Ingram's family's farm in Graves County, Kentucky. [DN 1 at 5.] In early 2015, the Ingrams decided to construct a house on this property. At a trade show in St. Louis, Missouri, Mr. Ingram met Defendants Steve Medlin, Robert Davis, Nathan Verning, and an unknown architect employed by Oasis Investments, LLC. [*Id.* at 5.] The Ingrams informed them of their plans to build a house on their land and discussed the products and services the men were promoting as representatives of Defendants Premium Steel Building Systems, Inc., LeeCor Systems, LLC, and Oasis Investments, LLC. [*Id.*]

On or around April 23, 2015, Verning, an employee of Oasis, sent the Ingrams a document titled "Proposal/Contract." [DN 1-1 at 1–4.] The document detailed the "scope of

work to be completed" and provided a total quote of $270,000.00. [*Id.*] According to the Ingrams, they accepted Oasis's proposal and quote, and that document "became the written contract at issue in this Complaint." [DN 1 at 8.] Oasis began construction in September 2015. [*Id.* at 20.]

During the construction project, the Ingrams also obtained services from LeeCor Systems, LLC ("LeeCor") and Steve Medlin, an employee of LeeCor. [*Id.* at 9–10.] The Ingrams allege that, during the time they worked with LeeCor and Medlin, they were "in the business of marketing and selling residential steel frame and prefabricated foam panel construction materials that are designed, manufactured, packaged and/or marketed by Defendant Premium Steel Building Systems, Inc." [*Id.* at 10.] "LeeCor and Medlin hold themselves out as having experience and expertise in selecting and/or recommending certain products for inclusion in a new home build, such as, but not limited to, steel framing and prefabricated foam walls" manufactured by Premium. [*Id.* at 11.]

Ultimately, the construction went awry. Specifically, the Ingrams assert that "[a] number of problems have emerged, and are emerging, with the work completed by, or under the supervision of," Defendants. [*Id.* at 26.] These include, for example, "[n]oise and movement in the subflooring/steel structure," "[b]uckling of the roof decking," "[w]ater infiltration around the windows and doors and due to a lack of a vapor barrier at the basement level," "[a]ir infiltration through and/or around the wall panels," "windows installed crooked, floors that noticeably slope, walls that are not the same height, walls that are not plumb, damaged windows," and "[o]mitted materials and skipped steps in the framing process." [*Id.* at 26–27.]

According to the Ingrams, many of the representations in the Proposal/Contract document ("the Contract") between them and Oasis ultimately proved to be false and/or misleading. [*Id.* at

8–9.] The Ingrams assert that, "[i]n late May or mid-Summer 2016, Oasis Construction left the jobsite, refusing to return; and, to date, it has not completed all work required of it under the contract." [*Id.* at 21.] "To date, the Ingrams have paid Oasis Construction approximately $248,000 for work done, purportedly done, or to be done on the new home build." [*Id.*] Additionally, the Ingrams allege that the structural system recommended to them by LeeCor and Medlin was improper for the construction of their home and could not be installed so as to comply with applicable building codes. They also allege that Medlin made various other misrepresentations, such as advising then that a vapor barrier was unnecessary when, in fact, the opposite was true.

On December 30, 2016, the Ingrams brought suit in this Court against several Defendants: Oasis Investments, LLC; Nathan K. Verning; LeeCor Systems, LLC; Steven Medlin; Robert Davis; and Premium Steel Building Systems, Inc. [*Id.* at 1.] The Ingrams bring claims of breach of contract; negligent construction; negligent hiring, training, retention, and supervision; negligent provision of professional services; fraud; negligent misrepresentation; violations of building codes under KRS § 198B.130; building professional liability under KRS § 411.256; and failure to warn. In the instant motion, two Defendants, LeeCor and Medlin, move to dismiss certain of these claims or, alternatively, for a more definite statement. [DN 14.]

## STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

In their motion, LeeCor and Medlin request that the Court dismiss Counts I, III, V, and X of the Ingrams' complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). [DN 14 at 2.] Alternatively, LeeCor and Medlin request that the Court "require plaintiffs to plead more specifically their claims against these defendants so that defendants can prepare their Answers and/or otherwise prepare for trial under Rule 12(e)." [*Id.*] The Court will address Defendants' alternative motions in turn.

### A. Failure to State a Claim Upon Which Relief Can be Granted

LeeCor and Medlin first request that the Court dismiss Counts I, III, V, and X of the Ingrams' complaint under Rule 12(b)(6).

### 1. Count One: Breach of Contract

In count one of their complaint, the Ingrams bring a claim for breach of contract against, among other Defendants, LeeCor and Medlin. [DN 1 at 36–37.] Specifically, the Ingrams allege that "LeeCor, Medlin and/or Premium have breached the written warranty as to the structural system, as well as implied warranties of fitness and workmanlike performance." [*Id.* at 37.] It appears that the Ingrams reference three different types of warranties in their complaint which they allege were breached. The Court will address each in turn.

### a. Written Warranty

Though the Ingrams allege that LeeCor and Medlin breached a written warranty as to the structural system used in the construction of their home, they have pointed to no such written warranty issued to them by LeeCor or Medlin. They have, however, identified a warranty issued to them by Premium, which the Ingrams attached as an exhibit to their complaint. That document is printed on "Premium Steel Building Systems Incorporated" letterhead and titled "WARRANTY." [DN 1-3.] It reads:

> We herby (*sic*) warrant that the structural framing materials supplied by us which have been installed by others at *Ingram Residence referenced above* was designed and shop fabricated in strict accordance with the drawings and specifications. We agree to repair or replace or cause to be repaired or replaced any or all of the materials which may prove defective within a period of *one (1) year* from substantial completion (January 30, *2016*). Ordinary wear and tear and unusual abuse or neglect are excluded from this warranty.

[*Id.*] The Warranty was signed by Premium representatives and dated April 8, 2016. [*Id.*] The Ingrams do not dispute that Premium designs, manufactures, and markets the residential steel frame and prefabricated foam panel construction materials that were used in the construction of their home. [*See, e.g.*, DN 1 at 10.] Accordingly, the fact that Premium provided a written warranty to the Ingrams for those materials follows logically. However, because the Ingrams

identify no such written warranty issued by LeeCor or Medlin for the same materials, and make no factual allegations that one existed, the Court agrees that the Ingrams have failed to state a claim for breach of written warranty as to those two Defendants.

**b. Implied Warranty of Fitness for a Particular Purpose**

The Ingrams also mention "implied warranties of fitness" in their breach of contract claim. [*Id.* at 37.] In detail, they state that "LeeCor, Medlin and/or Premium have breached . . . implied warranties of fitness and workmanlike performance." [*Id.*] Section 355.2-315 of the Kentucky Revised Statutes provides for implied warranties for fitness for a particular purpose. That statute, titled "Implied warranty; fitness for particular purpose," provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under KRS 355.2-316 an implied warranty that the goods shall be fit for such purpose.

Ky. Rev. Stat. Ann. § 355.2-315. In their motion to dismiss, LeeCor and Medlin argue that the Ingrams have failed to state a claim upon which relief can be granted for their implied warranty claim. [DN 14-1 at 4.] Specifically, they argue that the Ingrams have not pled sufficient facts regarding the two elements of implied warranty of fitness for a particular purpose: "first, that the seller was aware at the time of the contract that the buyer had intended a particular purpose for the goods; second, that the buyer relied on the skill or judgment of the seller to supply goods suitable for that particular purpose." *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 851 (W.D. Ky. 2016) (citing *Travelers Prop. Cas. Co. of Am. v. Rapid Power Corp.*, No. 5:12–CV–00038–R, 2013 WL 1898833, at *8 (W.D. Ky. May 3, 2013)). According to Defendants, "Plaintiffs' single paragraph alleging three warranties . . . against three different defendants fails to satisfy the pleading requirements of an implied warranty of fitness claim because defendants cannot know which particular defendant had knowledge for what particular

purpose or how that defendant's product failed to be fit for such a purpose." [DN 14-1 at 4.] Although the Ingrams' allegations are scant, the Court nonetheless finds that they have alleged sufficient factual matter to infer that LeeCor and/or Medlin knew of the purpose for which the Ingrams needed the structural system and that the Ingrams relied on LeeCor and/or Medlin's skill or judgment that the Premium structural system would be proper for that purpose.

The Ingrams allege several times throughout their complaint that the structural system used in the construction of their home was improper. [*See* DN 1 at 25.] Admittedly, several of these allegations only mention Defendant Premium. For instance, the Ingrams allege that "Premium 'provided the design . . . of the entire structural system' of the Ingrams and fabricated the same." [DN 1 at 16.] They further assert that "Premium additionally owed the Ingrams a duty of reasonable care in warning the Ingrams if the structural system it designed and/or sold to the Ingrams was improper for, not permitted for, and/or unsafe for the use in the planned construction." [DN 1 at 25.] Additionally, they allege that "Premium warranted to the Ingrams that the structural framing materials it supplied were 'designed and shop fabricated in strict accordance with the drawings and specifications.'" [DN 1 at 25.]

With regard to LeeCor, Medlin, and the structural system, however, the Ingrams allege that LeeCor and Medlin were "in the business of marketing and selling residential steel frame and prefabricated foam panel construction materials that are designed, manufactured, packaged and/or marketed by Defendant PREMIUM." [DN 1 at 10–11.] Next, they allege that LeeCor and Medlin "hold themselves out as having experience and expertise in selecting and/or recommending certain products for inclusion in a new home build, such as, but not limited to, steel framing and prefabricated foam walls." [*Id.* at 11.] They further allege that "Medlin and/or Oasis Construction represented to the Ingrams that the house plan had been modified by

Defendant PREMIUM['s] . . . engineers as necessary to allow for proper and permitted construction of the Ingrams' home using the materials recommended to the Ingrams." [*Id.* at 12.] Ultimately, according to the Ingrams, many, if not all of these representations were false. [*See id.* at 18.] While these allegations are minimal, our pleadings standards are liberal. Indeed, the Sixth Circuit has emphasized that "the fundamental tenor of the Rules [of Civil Procedure] is one of liberality rather than technicality." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *Miller v. American Heavy Lift Shipping,* 231 F.3d 242, 248 (6th Cir. 2000)). As such, "the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Id.*

Here, the Ingrams have alleged, throughout their complaint, that LeeCor and Medlin sold Premium's structural systems and that Medlin represented to the Ingrams that the structural system would work for their home. [*See* DN 1 at 10–12.] The Court finds that, at this early stage, the Ingrams have alleged sufficient facts to infer that LeeCor and/or Medlin sell Premium's structural systems, that they knew of the purpose for which the Ingrams sought to use one of the structural systems, that they recommended that the Ingrams use the system in the construction of their house, and that the system turned out to be improper. Therefore, the Court will deny Defendants' motion to dismiss with respect to the Ingrams' claim of breach of implied warranty of fitness for a particular purpose.

### c. Implied Warranty of Workmanlike Performance

Third, the Ingrams claim that "LeeCor, Medlin and/or Premium have breached . . . [the] implied warrant[y] of . . . workmanlike performance." [DN 1 at 37.] The Supreme Court of Kentucky has recognized

> as a common law principle an implied warranty of habitability to the "buyer of a
> new house from the professional builder-seller ... to the extent of holding that in

the sale of a new dwelling by the builder there is an implied warranty that in its major structural features the dwelling was constructed in a workmanlike manner and using suitable materials."

*Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 923 (Ky. 1994), *overruled on other grounds by Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011) (quoting *Crawley v. Terhune*, 437 S.W.2d 743, 745 (Ky. 1969)). Courts applying this principle have explained that it is implied only in instances in which a new house is sold by the builder of that house. In *Miller v. Massey*, for instance, the Court of Appeals of Kentucky determined that no implied warranty of workmanlike construction applied when "the plain language of the contract is that Massey is not responsible for construction of the building; therefore, Massey is not the builder and [the implied warranty recognized in] *Crawley* does not apply." *Miller v. Massey*, No. 2007-CA-002347-MR, 2009 WL 103160, at *5 (Ky. Ct. App. Jan. 16, 2009). In that case, the contract provided that the defendant, Massey, had only the "responsibility for overseeing construction and facilitating completion of the house," rather than participating in the actual construction thereof. *Id.* at *2. On the other hand, in some circumstances, courts have identified "a serious issue of fact . . . as to whether [a] developer [or other contractor] was also the builder" for purposes of the implied warranty of workmanlike construction. *See Miller v. Hutson*, 281 S.W.3d 791, 793 (Ky. 2009).[1]

In their motion to dismiss, Defendants argue that the Ingrams' "claim under a warranty of workmanlike performance fails because plaintiffs allege no facts suggesting Medlin and/or LeeCor Systems acted as builders in this case." [DN 14-1 at 5.] They argue that the Ingrams have only pled that LeeCor and Medlin sold Premium's structural systems and that Medlin was only

---

[1] In *Miller v. Hutson*, it ultimately proved unnecessary for the court to determine whether the developer, Hutson, was also the builder of the house for implied warranty purposes. This is because "Hutson also signed an expressed written warranty covering the premises in question for one year." *Miller v. Hutson*, 281 S.W.3d 791, 794 (Ky. 2009). However, had that not been the case, remand for further findings of fact would have been necessary. *See id.*

present on the job site "to direct 'those parts of the job that involved or effected (*sic*) the products he sold'" for Premium. [*Id.* (quoting DN 1 at 11).]

True, many of the Ingrams' allegations relate to Medlin's duty to merely "oversee," "direct," or "supervise" the construction project. [DN 1 at 12 ¶ 52, at 25 ¶ 127, at 29 ¶ 140(l).] However, the Ingrams also allege, at some points throughout their complaint, that Medlin had a part in actually constructing the house. For instance, they allege that Medlin "provided 'onsite assistance' with the installation of [Premium's] products in the construction performed by Oasis." [*Id.* at 17.] They also allege that, after Oasis began construction in September 2015, "[w]ork was also performed by Medlin." [*Id.* at 21.] Additionally, the Ingrams allege that Medlin sent them an email in which he stated, among other things, that the structural "system has been installed by an experienced contractor with onsite assistance from the President of" Premium, "as well as myself as a local sales representative." [*Id.* at 13.]

Accepting these allegations as true, which the Court must do at the 12(b)(6) stage, the Ingrams have pled sufficient facts for the Court to infer that Medlin may have had a part in actually building the house; specifically, in installing the structural system. Whether Medlin did, in fact, have any part in the actual construction of the house is a matter reserved for after discovery has taken place. At this time, however, the fact that the Ingrams have alleged that Medlin participated, at least in part, in the construction of the house, is sufficient. Accordingly, LeeCor and Medlin's motion to dismiss will be denied with respect to the Ingrams' claim of breach of the implied warranty of workmanlike performance.

### 2. Count Three: Negligent Hiring, Training, Retention and Supervision

In count three of their complaint, that Ingrams assert that "LeeCor breached its duties of reasonable care with regard to hiring, retaining, training and/or supervising Medlin and assigning

him, or permitting him, to advise, supervise and/or perform work on the Ingrams' project." [DN 1 at 38.] "Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 (Ky. 2014). These types of claims "focus on the direct negligence of the *employer* which permitted an otherwise avoidable circumstance to occur." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (emphasis added).

The Supreme Court of Kentucky has identified "the elements of negligent hiring and retention a[s]: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Brooks,* 283 S.W.3d at 733. Similarly, "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (citing *Smith v. Isaacs,* 777 S.W.2d 912 (Ky. 1989); Restatement (Second) of Agency § 213 (1958)).

In their motion to dismiss, Defendants assert that the Ingrams have not pled sufficient facts to infer that LeeCor negligently hired, trained, retained, or supervised Medlin. [DN 14 at 6–7.] Upon review of the Ingrams' complaint, the Court agrees. Though the Ingrams make various allegations of Medlin's purported negligence, they do not plead facts to suggest that LeeCor's own negligence caused Medlin's conduct. For instance, the Ingrams allege, in part, that "Oasis, Davis, the laborer named Eric, and/or Medlin failed to properly install window and door units pursuant to the building code and the manufacturer's installation instructions," "failed to properly fasten the Tuscan doors to the wall framing," and "failed to properly install the steel framing system, causing sloped floors in the house." [DN 1 at 33.] At no point, however, do the

Ingrams connect the dots between this alleged negligence by Medlin to any alleged negligent hiring, training, supervision, or retention of Medlin by LeeCor.

The Ingrams also make allegations as to how LeeCor and Medlin, together, were negligent, but not as it pertains to any of LeeCor's hiring, training, retention, or supervision of Medlin. For example, the Ingrams claim that "the wall panel system was recommended to the Ingrams by . . . Oasis, Verning, Medlin, LeeCor, and/or Premium without meeting the necessary design requirements for the required seismic conditions of this area, which constitutes a major structural deficiency with the home." [*Id.* at 32.] However, the Ingrams have pled no facts to suggest that LeeCor "knew or had reason to know of the risk that the employment [of Medlin] created," *Booker*, 350 F.3d at 517, such that any act or omission by LeeCor "permitted an otherwise avoidable circumstance to occur." *Brooks*, 283 S.W.3d at 734. *See, e.g.*, *Booker*, 350 F.3d at 517 ("Booker's complaint failed to allege that Verizon knew or should have known that the employee who drafted the electronic message would act as he or she did. While Booker alleged that Verizon had a duty to supervise its employees and that it failed to satisfy this duty, this Court is not bound to accept bare legal conclusions unsupported by factual allegations."); *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-00189-DJH, 2017 WL 1416817, at *2 (W.D. Ky. Apr. 19, 2017) ("[T]heir proposed amended complaint rests solely on bare assertions that Valley Tire was negligent in hiring and supervising its agents, servants, and employees. Because these allegations are 'devoid of 'further factual enhancement[,]' ' they cannot survive a motion to dismiss."); *Taylor v. JPMorgan Chase Bank, N.A.*, No. CIV. 13-24-GFVT, 2014 WL 66513, at *10 (E.D. Ky. Jan. 8, 2014) ("What are noticeably missing, however, are the factual allegations that show how these problems had previously manifested themselves such that Chase Bank should have been aware that Fry and James might incite disparate racial treatment at the bank.").

In their response to Defendants' motion to dismiss, the Ingrams state "it is true that the Complaint does not identify what LeeCor's internal practices and policies are with regard to hiring, training, supervision or retention." [DN 33 at 10.] However, according to the Ingrams, "the number and extremity of the failures in this action with which Medlin is directly associated gives rise to a fair inference that LeeCor's policies and practices with regard to hiring, training, supervision and/or retention are potentially partly to blame." [*Id.* at 11.] The Court disagrees. In order for the Ingrams "to raise a 'plausible' inference of wrongdoing" to survive Rule 12(b)(6), *16630 Southfield*, 727 F.3d at 504, they must "plead[] factual content that allows the court to draw the reasonable inference that [LeeCor] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here, the Ingrams have failed to allege sufficient factual matter regarding LeeCor's alleged negligent hiring, training, supervision, or retention of Medlin such that the Court can draw that reasonable inference. Although the Ingrams allege that LeeCor had a duty to reasonably hire, train, retain, and supervise Medlin and that LeeCor breached that duty, "this Court is not bound to accept bare legal conclusions unsupported by factual allegations." *Booker*, 350 F.3d at 517. Accordingly, Defendants' motion to dismiss the Ingrams' negligent hiring, training, retention, and supervision claim against LeeCor is granted.[2]

### 3. Count Five: Fraud

The Ingrams also allege a fraud claim against Medlin. [DN 1 at 40–41.] In their motion to dismiss, Defendants claim that the Ingrams' fraud claim against them fails because they have

---

[2] In their response, the Ingrams suggest that they also bring a claim of negligent hiring, training, retention, and supervision against Medlin related to his alleged negligent supervision of Davis, an Oasis employee, on the construction site. [*See* DN 33 at 10–11.] However, in Count III of their complaint, the Ingrams never allege that Medlin breached the duty to hire, train, retain, or supervise. [*See* DN 1 at 38–39.] However, the Ingrams *do* specifically allege that Oasis, Verning, LeeCor, and Premium breached those duties. [*Id.*] Because the Ingrams failed to make that same claim regarding Medlin in their complaint, however, the Court will not consider that claim here.

not pled the necessary elements of a fraud claim under Kentucky law. Here, the Ingrams allege fraud by misrepresentation. [DN 1 at 40–41.]

> In Kentucky, fraud by misrepresentation comprises six elements: (1) the defendant must have made a material misrepresentation; (2) that was false; (3) that the defendant knew was false, or made with reckless disregard for its truth; (4) that was intended to induce the plaintiff to act, based on the misrepresentation; (5) that the plaintiff reasonably relied; and (6) that caused the plaintiff injury.

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012) (citing *Flegles, Inc. v. TruServ Corp.,* 289 S.W.3d 544, 549 (Ky. 2009)).

Though the substance of a fraud claim is governed by Kentucky law, the procedure of pleading such a claim is governed by Federal Rule of Civil Procedure 9(b). *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). Under Rule 9(b), "a party alleging fraud 'must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Id.* (quoting Fed. R. Civ. P. (9)(b)). "The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters." *Id.* (citing *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir. 2011)). The Sixth Circuit has explained that, "to satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud." *Id.* (citing *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008)).

In their complaint, the Ingrams allege the following: that "Oasis Construction . . . Medlin, Verning and/or Premium acting through its agent or agents made material and false

misrepresentations to the Ingrams," that "[e]ach defendant knew at the time of making the misrepresentation that it was false – or, alternatively, made the misrepresentation recklessly, without any knowledge of its truth and as a positive assertion," that "[e]ach made his or its misrepresentation(s) with the intention of inducing the Ingrams to act or with the intention that is should be acted upon," and "[t]he Ingrams relied upon said misrepresentation(s) and suffered injury as a result." [DN 1 at 40–41.]

According to Defendants, "[i]t is wholly unknown what purported statements were fraudulent in nature and from which party given plaintiffs make a blanket allegation against all defendants alleging that each supplied false information." [DN 14-1 at 8.] Defendants concede that "plaintiffs [do] separately allege various statements made by Medlin, including so-called representations about a vapor barrier and the system as a whole," however, they argue that "plaintiffs never alleged which statements were allegedly false or allegedly fraudulent in an attempt to induce plaintiffs to act." [*Id.*]

However, after "prob[ing] deeper and examin[ing] the substance of the complaint" as a whole, which the Federal Rules require, *Minger*, 239 F.3d at 799, the Court finds that the Ingrams have made sufficient allegations to specifically plead fraud under Kentucky law. For instance, the Ingrams allege that "LeeCor and Medlin hold themselves out as having experience and expertise in selecting and/or recommending certain products for inclusion in a new home build, such as, but not limited to, steel framing and prefabricated foam walls." [DN 1 at 11.] They also state that

> Medlin specifically assured Mr. Ingram that he had the experience and ability necessary to oversee a residential construction project using the materials he markets and sells and represented that he would be present at the new home build in question "every step of the way" to assure proper construction.

[*Id.* at 12.] Next, the Ingrams allege that Medlin assured them that copies of the house plans had been sent to Premium and modified "as necessary to allow for proper and permitted construction of the Ingrams' home using the materials recommended to the Ingrams." [*Id.*] Additionally, the Ingrams claim that they consulted with Medlin about whether a "vapor barrier" needed to be installed "between the prefabricated foam wall panels and the brick veneer" and that Medlin advised that a vapor barrier was not required. [*Id.*] According to the Ingrams, "[t]he vapor barrier . . . should have been recommended and installed by Oasis." [*Id.* at 13.] Finally, the Ingrams allege that "[o]ne or more of the foregoing statements was false and/or intended to mislead the Ingrams." [DN 1 at 14.]

The Court is satisfied that these allegations against LeeCor and Medlin are sufficiently specific so as to "alert defendants to the particulars of the allegations against them so they can intelligently respond," a key purpose of Rule 9(b)'s particularity requirement. *Thompson*, 773 F.3d at 751. In essence, the Ingrams assert, first, that LeeCor and Medlin represented that they could adequately recommend materials to be used in the construction of the Ingrams' home, but that they improperly and intentionally recommended the use of Premium's structural system. Second, they allege that Medlin represented that he would ensure that the system was properly installed, but that this representation was false and that the system was not installed properly. Third, they assert that Medlin misrepresented that a vapor barrier was not necessary, which turned out to be false, as they allege that one should have been recommended. "Such [] lie[s], if proven, could sustain a claim for fraud." *Republic Bank*, 683 F.3d at 249. At this time, the Court finds that these allegations provide enough specificity to state a claim for fraud under Kentucky law and to allow LeeCor and Medlin to form their responses. To the extent Defendants seek

additional detail, they will have the opportunity to obtain those details through discovery. Accordingly, Defendants' motion to dismiss the Ingrams' fraud claim is denied.

### 4. Count Ten: Failure to Warn

Finally, Defendants move to dismiss the last count of the Ingrams' complaint, labeled "Failure to Warn." [DN 1 at 44.] In support of that claim, the Ingrams allege that

> Premium, LeeCor, Medlin and/or Oasis Construction and/or Verning (hereinafter collectively "Oasis") knew, or should have known, from the house plans that they modified, the applicable building code, and/or their knowledge of the products recommended to the Ingrams that the products and/or methods of construction they recommended and employed were not permissible and/or suitable and that use of them would result in damage to the Ingrams, including, but not limited to, having a home not compliant with the building code.

[*Id.*] The Ingrams further allege that "Premium, LeeCor, Medlin and/or Oasis failed to warn the Ingrams" "that the house as specified in the plans reviewed, and modified by one or more of these defendants, could not be built to code using Premium's structural system," and "that the structure would not otherwise meet the building code, including, but not limited to, with regard to gravity, wind and seismic load requirements." [*Id.* at 45.]

In their motion to dismiss, LeeCor and Medlin argue that the Ingrams' failure to warn claim "combine[s] several possible tort/contract theories under a single count" and that "[t]his count is not properly pled. It is not a failure to warn count at all." [DN 14-1 at 9.] After reviewing Kentucky law on "failure to warn" liability, the Court agrees. As far as the Court can discern, Kentucky law recognizes three categories of failure to warn claims. First, for product manufacturers, "a failure to warn claim may be premised on an absence of warning or an inadequate warning" related to the foreseeable and expected use of a potentially dangerous product. *Enlow v. St. Jude Med., Inc.*, 210 F. Supp. 2d 853, 859 (W.D. Ky. 2001). Second, "premises owners can be held to a duty to warn upon a showing of known dangerousness and a

failure to warn." *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010) (citing *Brewster v. Colgate–Palmolive Co.,* 279 S.W.3d 142, 143 (Ky. 2009)). Third, individuals with an "enhanced ability to observe the conditions under which [the person causing the harm] might be expected to be especially dangerous" may have a duty to warn a third party of possible harm. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 850–51 (Ky. 2005) (citations omitted). "The most common applications of this theory of liability occur within the contexts of the state/parolee relationship, and the psychotherapist/patient relationship." *Id.* (internal citations omitted).

The allegations the Ingrams make in support of their failure to warn claim do not fall under any of the three categories of failure to warn liability recognized in Kentucky. They do not allege that LeeCor or Medlin failed to warn them of any known *dangerousness* of the structural system used in their house, or of any potential harm to a third person, but that the structural system was improper for the construction, could not be installed in accordance with applicable building codes, and was not installed by sufficiently trained contractors. [*See* DN 1 at 44–45.] These allegations, when taken as true, do not state a claim upon which relief can be granted for "failure to warn." Rather, they are more properly directed toward claims of ordinary negligent construction, negligent provision of professional services, negligent misrepresentation, and building code violations, which the Ingrams also allege in their complaint and which remain pending in the case. For these reasons, LeeCor and Medlin's motion to dismiss will be granted with respect to Plaintiffs' failure to warn claim.

## B. More Definite Statement

To the extent the Court denies LeeCor and Medlin's motion to dismiss, LeeCor and Medlin request that the Court require the Ingrams to make a more definite statement as to the

remaining claims against them under Rule 12(e). With respect to the Ingrams' claims of breach the implied warranty of fitness for a particular purpose, breach the implied warranty of workmanlike performance, and fraud, the Court has denied LeeCor and Medlin's motion to dismiss. However, the Court will not require the Ingrams to make a more definite statement as to those claims.

> Federal Rule of Civil Procedure 12(e) provides that
>
> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). However, "[a] motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail." *United States v. Paul*, No. CIV. A. 6:07-CV-36, 2008 WL 2074024, at *2 (E.D. Ky. May 13, 2008) (quoting *Schwable v. Coates,* 2005 WL 2002360, at *1 (N.D. Ohio August 18, 2005)). Therefore, "[it] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Id.* (quoting *Schwable*, 2005 WL 2002360, at *1). Here, though the Ingrams' allegations may be limited, they are not unintelligible such that LeeCor and Medlin cannot possibly formulate a response. The Court is confident that Defendants can obtain the additional information they seek through discovery. Accordingly, Defendants' 12(e) motion is denied.

### C. Motion to Strike

After the Ingrams filed their response to LeeCor and Medlin's motion to dismiss, LeeCor and Medlin made a motion to strike the Ingrams' response as untimely. [DN 38.] Therein, Defendants explain that their motion to dismiss was filed on March 6, 2017. [*See* DN 14.] The

Ingrams did not respond to that motion until June 9, 2017, more than three months later. [*See* DN 33.] Under our Local Rules, "a party opposing a motion must file a response within 21 days of service of the motion. Failure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c).

In response, the Ingrams' counsel concedes that the response was filed late, but explains that this untimeliness was due to a calendaring error. [DN 41 at 2–3.] The Ingrams' counsel further explains:

> The delay here was not intentional, was not meant to gain any advantage, and was not intended as a slight to the Court or to opposing counsel. In fact, it was not intended at all. Rather, the delay resulted from a calendaring error by counsel and oversight during an office move. Upon discovery, a brief response was immediately filed. The delay caused no prejudice to the Moving Defendants. Striking the Response is a harsh remedy and is not required for purposes of justice.

[*Id.* at 4.] The Court agrees. LeeCor and Medlin offer no justification for striking the Ingrams' response other than the fact that the response was untimely filed. In other words, they have identified no alleged bad faith or ascertainable prejudice as a result of the late filing. Accordingly, the Court finds that striking the Ingrams' response is unnecessary, and therefore will deny Defendants' motion.

CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

(1) Defendants LeeCor and Medlin's partial motion to dismiss or, in the alternative, for a more definite statement, [DN 14], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to Plaintiffs' breach of written warranty, negligent hiring, training, retention and supervision, and failure to warn claims, which are dismissed for failure to state a claim upon which relief can be granted. The motion is

**DENIED** with respect to Defendants' alternative request for a more definite statement as to Plaintiffs' remaining claims.

(2) Defendants' motion to strike Plaintiffs' response, [DN 38], is **DENIED**.

**IT IS SO ORDERED**.


Date:

cc:     Counsel